UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

|  |  |  |
|---|---|---|
| DON JUNIOR COLLETT, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 13-299-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| CAROLYN COLVIN, Acting | ) | **&** |
| Commissioner of Social Security, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Plaintiff, Don Collett, brought this action pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of an administrative decision of the Commissioner of Social Security (Commissioner) denying Collett's application for disability insurance benefits (DIB) and supplemental security income (SSI).  The Court, having reviewed the record and for the reasons set forth below, will deny Collett's Motion for Summary Judgment [R. 21] and grant the Commissioner's [R. 22].

## I

Collett filed applications for DIB and SSI on February 9, 2012. [Transcript (Tr.) 177-82, 182-84, 202.]  He alleges a disability beginning on June 1, 2011, due to seizure disorder, Hepatitis C and other liver problems alcoholism, and hypertension. [Tr. 177, 183; R. 21-1 at 1.]  Collett's date last insured is December 31, 2014.  [Tr. 27.]  Collett's applications were denied initially in May 2012, and upon reconsideration in September 2012.  [Tr. 115-18, 120-25].  Subsequently, an administrative hearing was conducted before Administrative Law Judge (ALJ) Don Paris on March 5, 2013. [Tr. 45-51.]  Collett, who was forty-nine years old at the time of the

ALJ's decision, has a limited education, having left school in the eighth grade. [Tr. 30, 53, 243.]. He has past work experience doing manual labor, but the ALJ found that Collett could no longer perform such work due to his impairments. [Tr. 30.]

In evaluating a claim of disability, an ALJ conducts a five-step analysis. *See* 20 C.F.R. §§ 404.1520, 416.920.[1] First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(a)(4)(i). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(a)(4)(ii). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(a)(iv). Fifth, if a claimant's impairments (considering residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. §§ 404.1520(f), 416.920(a)(4)(v).

In this case, at Step 1, ALJ Paris found that Collett has not engaged in substantial gainful activity since June 1, 2011, the alleged onset date. [Tr. 27.] At Step 2, the ALJ found that Collett

---

[1] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

has "severe" impairments of chronic liver disease, depressive disorder, organic mental disorder, and chronic alcohol abuse with alcohol-based psychoses and alcohol-based seizure disorder.  [Tr. 27.]  At Step 3, the ALJ found that Collett's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 27-29].  Before moving to Step 4, the ALJ determined that Collett had the residual functional capacity (RFC) to perform a reduced range of medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), but with certain physical and mental limitations.  [Tr. 29.]  Specifically, with regard to mental limitations, the ALJ determined that when including the effects of substance abuse, Collett would be "unable to sustain concentration and attention sufficiently to complete a 40-hour workweek, even in the performance of simple tasks," and that his alcohol intoxication would cause him to miss work at least two days per month.  [Tr. 29.]  At Steps 4 and 5, the ALJ determined that in light of Collett's substance abuse disorder, he is unable to perform any past relevant work, or indeed any work that exists in significant numbers in the national economy. [Tr. 30-31.]

The ALJ then considered Collett's RFC apart from the alcohol abuse.  In doing so, ALJ Paris found that even if Collett stopped abusing alcohol, he would still suffer from severe impairments, but that his remaining limitations would not meet the criteria for any listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [Tr. 31-32.]  However, if Collett stopped abusing alcohol, the ALJ determined that his mental RFC would improve significantly, and that although he would still have some mental limitations, he would be able to "understand, remember, and carry out simple verbal instructions," and could sustain such instructions in two-hour segments over the course of a workday.  [Tr. 32-33.]  The ALJ also found that apart from the effects of his substance abuse, Collett "can tolerate occasional contact with supervisors and

3

co-workers" if "brief and casual and in a non-public setting," and he "can adapt to expected changes and pressures of a routine work setting with reasonable support and structure." [Tr. 33.] Additionally, ALJ Paris found that if Collett stopped abusing alcohol, he still would be unable to perform his past relevant work, but that, considering his mental limitations without substance abuse and based on the testimony of vocational expert Joyce P. Forrest, there is a significant number of jobs in the national economy that he could perform. [Tr. 36.] Accordingly, on March 15, 2013, the ALJ issued an unfavorable decision, finding that because Collett's substance abuse disorder is "a contributing factor material to the determination of disability," Collett is not disabled as defined in the Social Security Act, and is therefore ineligible for DIB and SSI. [Tr. 37]. The Appeals Council declined to review the ALJ's decision [Tr. 1-4], and Collett now seeks judicial review in this Court.

## II

This Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Cutlip, 25 F.3d at 286* (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524,

4

535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)).  However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988).  Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.  *See Ulman, 693 F.3d at 714*; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

## A

Collett's first, and indeed only, argument on appeal is that the ALJ erred in his determination at Step 3 that Collett's mental impairments do not meet one of the listings.  [R. 21-1 at 5.]  Collett argues that there is substantial evidence that he meets Listing 12.05(B) for Intellectual Disability[2] and alternatively contends that he also meets the requirements of Listing 12.05(D). [*Id.*]  At Step 3 of the sequential evaluation process, the claimant has the burden of showing that his impairments are equal or equivalent to a listed impairment.  *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012) (citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).  Because "the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary," the evidentiary standards for determining disability by meeting the listed impairments are stricter than the standards employed at later steps in the sequential evaluation process.  *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); *See* 20 C.F.R. §§ 404.1526, 416.926.  "For a claimant to show that his impairment matches a listing, it must

---

[2] Effective September 3, 2013, the term "intellectual disability" replaced the previous term "mental retardation" in Listing 12.05.  *See* 78 Fed. Reg.  46,499 (August 1, 2013) (codified at 20 C.F.R. pts. 404 and 416).  Because ALJ Paris issued his decision in March, 2013, he used the term "mental retardation," but this Opinion and the parties' briefs use the current term "intellectual disability."

meet *all* of the specified medical criteria.  An impairment that manifests only some of those

criteria, no matter how severely, does not qualify." *Id*. at 530 (emphasis in original); *see also*

*Malone*, 507 F. App'x at 472 (quoting *Zebley*, 493 U.S. at 530).

A claimant only meets Listing 12.05[3] if his impairment "satisfies the diagnostic

description in the introductory paragraph *and* any one of the four sets of criteria" in Paragraphs

A though D.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00 (emphasis added).  Thus, in order to

satisfy the requirements of Listing 12.05 for Intellectual Disability, a claimant must show

"significantly subaverage general intellectual functioning with deficits in adaptive functioning

initially manifested during the developmental period, i.e., the evidence demonstrates or supports

onset of the impairment before age 22"; and the claimant must also show one of the sets of

criteria in Paragraphs A, B, C, or D.  *Id*. §12.05; *see also id.* §12.00(A)("Specific symptoms,

signs, and laboratory findings in the paragraph A criteria of any of the listings in this section

cannot be considered in isolation from the description of the mental disorder contained at the

beginning of each listing category."); *Zebley*, 493 U.S. at 530-32; *Foster*, 279 F.3d at 354-55.

The criteria in Paragraph B of 12.05, which Collett claims he meets, only requires "[a] valid

verbal, performance, or full scale IQ of 59 or less."  20 C.F.R. Pt. 404, Subpt. P, App. 1

§12.05(B).  The criteria in Paragraph D, which Collett also claims he meets, requires an IQ score

of 60 to 70 *and* at least two of the following: marked restriction of activities of daily living;

marked difficulties in maintaining social functioning; marked difficulties in maintaining

---

[3] ALJ Paris considered and discussed several other parts of Listing 12.00 when assessing Collett's case, including Listing 12.02 (organic mental disorders), 12.03 (various psychotic disorders),12.04 (affective disorders), and 12.09 (substance abuse disorders), as well as Listing 5.05 for chronic liver disease and Listing 11.00 for various seizure disorders.  [Tr. 27-28.]  Collett, however, only challenges the ALJ's findings concerning 12.05, and therefore the Court need only address that particular Listing here.

concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.  *Id*. § 12.05(D).

ALJ Paris noted that the consultative examiner measured Collett's full-scale IQ at 59, which meets the criteria of Paragraph B, and he also discussed the requirements in Paragraph D within the context of other Listings having similar requirements.  [Tr. 28-29.]  Importantly, however, the ALJ determined that Collett did not meet any part of Listing 12.05 primarily because Collett failed to show that his intellectual deficits initially manifested prior to age twenty-two, which is a threshold requirement of Listing 12.05 that must be satisfied before consideration of any criteria in Paragraphs A through D.  [Tr. 28-29 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.05).]  Specifically, ALJ Paris noted that the record contains only limited education records and no IQ scores, medical records, or psychological evaluations from the years prior to Collett reaching the age of twenty-two.  [*Id*.]  Moreover, the available education records show that Collett functioned at "significantly higher" academic levels when he was in eighth grade (just before he left school) than the levels obtained by consultative examiner Dr. Skaggs, and Collett's earning records show consistent employment throughout his adult life.  [Tr. 28-29, 282, 457-59.]  Because the record contained no other evidence of intellectual or adaptive functioning deficits before age twenty-two, and because the record contained voluminous evidence of Collett's alcoholism contributing to his present intellectual deficits, the ALJ found that Collett did not meet Listing 12.05 and went on to consider Listings 12.09 (substance addiction disorders) and 12.02 (organic mental disorders), which are not at issue here.  [Tr. 29.]

Collett now argues that the ALJ should have found that he meets Listing 12.05, but the only support offered for his contention that his intellectual deficits manifested before age twenty-two is a single sentence in his brief stating that he "took special education classes while in

7

school," that he presently "is functionally illiterate" (apparently implying he did not learn to read and write before age twenty-two), and that he left school in the eighth grade. [R. 21-1 at 5.] None of these assertions, however, demonstrate that Collett suffered from intellectual or adaptive deficits as defined in Listing 12.05 during the developmental period.  Although claimants are not required to produce an IQ score obtained before age 22, a claimant is required to make some showing that his deficiencies in adaptive functioning arose before that time, but Collett has offered no evidence at all to make this showing.[4]  *West v. Comm'r of Soc. Sec.*, 240 F.App'x 692, 698 (6th Cir. 2007).  Indeed, the "adaptive functioning" referenced by the diagnostic description in Listing 12.05 is distinct from intellectual functioning, and the claimant must also present evidence of adaptive functioning deficits related to the subaverage intellectual functioning during his developmental period to meet this requirement.  *Peterson v. Comm'r of Soc. Sec*., 552 F. App'x 533, 540 (6th Cir. 2014) (citing West, 240 F.App'x at 698).  This Circuit has repeatedly found that neither leaving school early, nor participation in special education classes, nor other circumstantial evidence such as poor grades, are by themselves enough to establish the deficits in intellectual or adaptive functioning required for Listing 12.05.  *See Eddy v. Comm'r of Soc. Sec*., 506 F.App'x 508, 510 (6th Cir. 2012) (affirming ALJ's conclusion that claimant did not meet Listing 12.05 because claimant's reliance on records of attending special education classes and quitting school in eighth grade were insufficient to establish that she had significantly subaverage intellectual functioning before age twenty-two); *see also Foster*, 279 F.3d at 355 (finding that Foster failed to demonstrate intellectual deficits before age 22 because "[t]he only

---

[4] The Court notes that the "Argument" portion of Collett's brief is completely devoid of any citations to the record, and also contains no citations or to any case law, statutes, or regulations that would support his argument that Collett meets any of the Listings.  The only records the Court can find from before Collett reached age twenty-two are the single page of school records referenced by both parties and the ALJ [Tr. 282], and a note from a nurse about his shortness of breath dated in 1979. [Tr. 613.]  Clearly such records are insufficient to establish adaptive or intellectual functioning deficits during the developmental period.

evidence in the record pertaining to this issue is that Foster left school after completing ninth grade, but why Foster did not continue with her studies is unclear"); *Peterson*, 552 F. App'x at 540 (finding that neither school records of poor performance and a low IQ nor "a history of special education combined with an adult IQ score are necessarily enough to demonstrate that a claimant had adaptive functioning deficits before age twenty-two"); *Hayes v. Comm'r of Soc. Sec.*, 357 F.App'x 672, 677 (6th Cir. 2009) ("[t]his Court has never held that poor academic performance, in and of itself, is sufficient to warrant a finding of onset of subaverage intellectual functioning before age twenty-two."); *West*, 240 F.App'x at 698 (affirming ALJ's denial of benefits, in part, because claimant submitted no evidence of intellectual deficits manifesting before age twenty-two); *Carter v. Comm'r of Soc. Sec.*, 2012 WL 1028105, at *6 (W.D.Mich. Mar. 26, 2012) (finding that submitting reports of low grades, absenteeism, and participation in special education classes did not establish that claimant's intellectual deficits for purposes of Listing 12.05 manifested before age twenty-two).

In contrast, Collett references no legal support whatsoever for his contention that he meets any aspect of Listing 12.05.  [*See* R. 21-1.]  Moreover, the only school records submitted [Tr. 282] indicate Collett had higher math and reading abilities in junior high school than he currently has, and thus the fact that he is functionally illiterate as an adult shows, if anything, that his intellectual abilities have decreased since his developmental years -- an assumption that is further supported when considering his long history of alcohol abuse.  *See Peterson*, 552 F. App'x at 540 (noting that claimant's "backslide in skills such as reading, coupled with his having been diagnosed with alcohol dependency or abuse by every relevant professional who evaluated him, suggests that Peterson's loss of adaptive functioning occurred after the developmental phase").  Finally, Collett himself even stated he was not disabled prior to age twenty-two in his

9

February 2012 application for SSI benefits.  [Tr. 177.]  Thus, substantial evidence clearly

supports the ALJ's finding that Collett does not meet the threshold requirement for Listing 12.05,

and it is therefore unnecessary to engage in further analysis of whether Collett meets the

additional requirements of Paragraphs B or D.

## B

A potentially related issue to Collett's contention that he meets Listing 12.05 concerns

the ALJ's determination that Collett's alcoholism was a material factor in the ultimate decision

to deny him benefits.  Collett admits that he has a long history of alcoholism, and he concedes

that Public Law 104-121 prohibits granting SSI or DIB to anyone for whom alcoholism is

determined to be a contributing factor material to the findings of disability.  [R. 21-1 at 5-6.]

Indeed, Collett's only challenge to the ALJ's decision on this point is his completely

unsupported assertion that "alcoholism is not a contributing factor to his IQ of 5[9]; therefore, he

satisfies the requirements of Listing 12.05." [5] [*Id*. at 6.]

When a claimant is found disabled and there is medical evidence of a drug addiction or

alcoholism, the Commissioner next "must determine whether [the claimant's] drug addiction or

alcoholism is a contributing factor material to the determination of disability."  20 C.F.R.

§404.1535(a).  In SSR 13-2p, the SSA explains its policies and procedures for considering

"whether 'drug addiction and alcoholism' (DAA) is a contributing factor material to our

determination of disability" by explaining that:

---

[5] As the Commissioner correctly notes in response to this statement [R. 22 at 4, n.2], when claimants merely refer to issues "in a perfunctory manner, unaccompanied by some effort at developed argumentation," the issue is deemed waived.  *Kennedy v. Comm'r of Soc. Sec.*, 87 Fed. App'x 464, 466 (6th Cir. 2003).  Nevertheless, given the nature of Collett's argument about Listing 12.05, and the integral role his alcoholism played in the ultimate disability determination, the Court will briefly attempt to clarify any potential confusion on the matter.  In doing so, however, the Court will not attempt to re-interpret Collett's cursory assertion as a more substantive challenge to the ALJ's ultimate findings about Collett's alcoholism.

> The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find a claimant disabled if he or she stopped using drugs or alcohol.

*Soc. Sec. Ruling, Ssr 13-2p.; Titles II & Xvi: Evaluating Cases Involving Drug Addiction & Alcoholism (Daa)*, SSR 13-2P (S.S.A Feb. 20, 2013).  Under the DAA Amendments, "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S. §§ 423(d)(2)(C), 1382c(a)(3)(J).

Here, ALJ Paris ultimately found that Collett's alcohol abuse was a contributing factor material to the disability determination because if Collett stopped the substance use, there would exist a significant number of jobs in the national economy that he could perform.  [Tr. 37.] Given the extremely limited nature of Collett's argument, however, the Court need only address whether the ALJ improperly considered the issue in his finding that Collett did not meet Listing 12.05.[6]  As explained above, the reason Collett does not meet Listing 12.05 is because he failed to meet the threshold requirement of showing that his intellectual and adaptive functioning deficits manifested before age 22, not because alcohol contributed to his IQ score.  Because Collett could not satisfy the initial diagnostic description, further analysis of what did or did not cause his low IQ score is unnecessary.  Thus, the ALJ did not deny Collett benefits because he thought that Collett's alcoholism contributed to his low IQ score, nor did the ALJ discount Collett's low IQ because of his alcoholism.  Regardless of whether Collett's alcoholism affected his IQ score, his substance abuse was not the driving motivation in finding that he did not meet

---

[6] Once again, Collett's assertion is completely unsupported by citations to the record, law, or other evidence.

Listing 12.05.  Rather, the alcoholism was a material factor in the ALJ's analysis at later steps in the sequential evaluation process [Tr. 29-36] – steps which Collett does not challenge here.[7]

### III

As explained above, the Court's role is to review whether there is substantial evidence in the record to support the ALJ's decision.  42 U.S.C. § 405(g); *Wright*, 321 F.3d at 614.  Collett fails to provide any evidence, let alone substantial evidence, to support his contention that he meets Listing 12.05, and to the extent that he challenges any other aspect of the ALJ's determinations concerning his alcoholism, the record is replete with overwhelming evidence supporting the ALJ's conclusions.  Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Collett's Motion for Summary Judgment [**R. 21**] is **DENIED**;

2. The Commissioner's Motion for Summary Judgment [**R. 22**] is **GRANTED**; and

3. **JUDGMENT** in favor of the Commissioner will be entered contemporaneously herewith.

This the 19th day of March, 2015.



Signed By:

*Gregory F. Van Tatenhove*

**United States District Judge**

---

[7] Indeed, Collett does not challenge any aspect of the ALJ's RFC determination at all or any other aspect of the ALJ's decision at Steps 4 and 5, and thus the Court will not analyze those steps further.